UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Applicant, )<br>)<br>v. )<br>)<br>CONCETTA A. DONOVAN and )<br>DAVID K. DONOVAN, SR., )<br>)<br>Respondents. )<br>) | Misc. Business Docket<br>No. 06-MC 10454-RCL |

## APPLICATION FOR ORDER TO SHOW CAUSE AND FOR
## ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENAS

The Securities and Exchange Commission ("Commission") respectfully applies to this Court for: (1) an Order to Show Cause why Respondent Concetta A. Donovan should not comply with the Commission's administrative subpoena for documents and testimony, and why Respondent David K. Donovan, Sr. should not comply with the Commission's administrative subpoena for documents; and (2) an Order compelling Respondents Concetta A. Donovan and David K. Donovan Sr. to produce all documents responsive to the administrative subpoena and compelling Respondent Concetta A. Donovan to appear for testimony (in one-hour increments, if necessary) in the Commission's Boston District Office.

In further support of this Application, the Commission files the Declaration of Bradford E. Ali, Esq. in Support of Application for Order to Show Cause and for Order to Comply with Administrative Subpoenas ("Ali Declaration") as **Exhibit A** hereto.

## I. SUMMARY

This matter arises out of the failure of Respondents Concetta A. Donovan ("Concetta") and David K. Donovan, Sr. ("DKD Sr.") to comply with valid administrative subpoenas issued on April 6, 2005 in connection with the Commission's formal investigation of possible illegal insider trading in the securities of Covad Communications Group, Inc. ("Covad"). The subpoenas required Concetta and DKD Sr. to produce relevant documents and to appear for testimony. To date – more than nineteen months after the subpoenas were issued – Concetta and DKD Sr. have not produced any documents in response to the subpoenas, and Concetta has not appeared for testimony.[1] As discussed below, counsel for Respondents has not offered any legitimate reason for her clients' failure to comply with the subpoenas.

The Respondents' failure to produce documents and Concetta's failure to appear for testimony are impeding and delaying a properly authorized investigation into possible violations of the federal securities laws. Accordingly, the Commission requests that this Court issue: (1) an Order to Show Cause why Concetta and DKD Sr. should not comply with the administrative subpoenas; and (2) an Order compelling Concetta and DKD Sr. to produce all documents responsive to the subpoenas and compelling Concetta to appear for testimony (in one-hour increments, if necessary) in the Commission's Boston District Office.

## II. BACKGROUND

### A. The Commission's Formal Order of Investigation

On March 22, 2005, the Commission issued an Amended Order Directing Private

---

[1] DKD Sr. gave investigative testimony on May 5, 2005.

2

Investigation and Designating Officers to Take Testimony ("Amended Formal Order") in an investigation entitled <u>In the Matter of Fidelity Investments' Trading Practices</u>, File No. B-02103, pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77t(a)], Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78u(a)], Section 209(a) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §80b-9(a)], and Section 42(a) of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. §80a-41(a)]. *See* Ali Declaration, ¶5.

The Amended Formal Order – which supplanted an Order Directing Private Investigation and Designating Officers to Take Testimony that was issued on November 19, 2004 – directed certain Commission staff members to undertake a private, formal investigation to determine (in addition to what was authorized under the November 19, 2004 Order) whether there were violations of certain anti-fraud provisions of the federal securities laws in connection with trading in the securities of, and disclosing material, nonpublic information regarding, Covad. Ali Declaration, ¶6. The Amended Formal Order specified the period under investigation to be from at least September 2002 to at least October 2004. *Id.*

### B. Background on the Investigation

At all relevant times, Concetta and DKD Sr. lived in Marblehead, Massachusetts. They are married and are the parents of David K. Donovan, Jr. ("DKD Jr."). Ali Declaration, ¶10. At all relevant times, DKD Jr., who also lived in Marblehead, was an equity trader for FMR Co., Inc.[2] In his role as an equity trader, DKD Jr. had the ability to access FMR Co.'s internal trade

---

[2] FMR Co., Inc. ("FMR Co.") is registered with the Commission as an investment adviser pursuant to Section 203(c) of the Investment Advisers Act of 1940 [15 U.S.C. §80b-3(c)], with its principal

database to obtain information concerning FMR Co.'s activity in specific securities, including whether FMR Co. had any pending buy or sell orders for its advisory clients in those securities. Ali Declaration, ¶11.

During the period from at least July 8, 2003 to August 6, 2003, FMR Co.'s internal trade database reflected that FMR Co. was purchasing and intended to continue purchasing substantial amounts of Covad stock for its advisory clients.³ Indeed, records reflect that FMR Co. bought 3,201,500 shares of Covad stock and sold 661,131 shares of Covad stock for its advisory clients during that period.⁴ Ali Declaration, ¶12.

During the period from July 8, 2003 to August 6, 2003, DKD Jr. was not personally responsible for trading Covad on behalf of FMR Co.'s advisory clients. Nonetheless, DKD Jr. accessed information about Covad stock in FMR Co.'s internal trade database on approximately 44 occasions during that one-month period. Each time DKD Jr. accessed information about Covad in FMR Co.'s internal trade database, he would have been able to determine, among other things, how many pending buy and sell orders in Covad stock (including the number of shares) FMR Co. intended to place for its advisory clients. 6Ali Declaration, ¶15.

The Commission staff has taken the testimony of a number of people, including DKD Jr.

---

place of business in Boston, Massachusetts. FMR Co. is a wholly-owned subsidiary of Fidelity Management & Research Company, which is a wholly-owned subsidiary of FMR Corp., which utilizes the trade name "Fidelity Investments." FMR Co. is an adviser to Fidelity Investments' family of mutual funds and other institutional clients. Ali Declaration, ¶8.

³ During the relevant period, Covad was a Delaware corporation headquartered in San Jose, California, and its common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. §78l(g)]. Shares of Covad common stock were traded on the OTC Bulletin Board. Ali Declaration, ¶9.

⁴ During this period, Covad stock traded at between $0.85 and $1.87 per share.

and DKD Sr. DKD Jr. admitted in testimony that he discussed Covad stock with his mother and stated, among other things, that he could not say with 100% certainty that he did not advise his mother or father about FMR Co.'s pending orders in Covad for its advisory clients. DKD Sr. testified, among other things, that he first heard of Covad when he received a subpoena from the Commission staff in 2005. Ali Declaration, ¶16.

### C. The Respondents' Failure to Comply with the Administrative Subpoenas

On April 6, 2005, the Commission staff issued separate subpoenas to Concetta and DKD Sr. for documents and testimony, requiring them to produce responsive documents on April 15, 2005 and to appear and provide testimony on April 18, 2005. Valerie S. Carter, Esq., who is counsel for both Concetta and DKD Sr., agreed to accept service of Concetta's subpoena; DKD Sr.'s subpoena was sent to his home via certified mail, return receipt requested. Ali Declaration, ¶17. To date, Concetta and DKD Sr. have not produced any subpoenaed documents and have not asserted their Fifth Amendment rights in connection with the subpoenaed documents. DKD Sr. testified before the Commission staff on May 5, 2005, but Concetta has refused to appear for testimony. Ali Declaration, ¶18.

#### 1. Concetta

From April 2005 to the present, attorney Carter has repeatedly advised members of the Commission staff that Concetta will not testify, produce documents or assert her Fifth Amendment privilege, ostensibly due to Concetta's medical condition. Ali Declaration, ¶¶19, 21, 23, 25, 27-28. Attorney Carter has provided four letters from Concetta's doctor, each of which has indicated, in substance, that Concetta has been experiencing pain and discomfort due

to various operations and is taking analgesic medication. However, none of the doctor's letters has stated that Concetta is: (1) suffering from any memory impairment, (2) unable to provide testimony for one hour at a time, or (3) suffering from any mental disability (such as would prevent her from being able to confer with her counsel about whether to invoke her Fifth Amendment rights). Ali Declaration, ¶¶21, 22, 26, 29. The doctor's letters thus provide no basis for Concetta's continuing refusal to produce documents in response to the subpoena or to invoke her Fifth Amendment rights.

In light of the doctor's letters, the Commission staff has suggested numerous accommodations to minimize any pain and discomfort from providing testimony, including: (1) postponing the testimony on a number of occasions, (2) offering to limit the testimony to only one hour at a time, (3) offering to take the testimony for one hour at a government office near Concetta's home or in attorney Carter's office, (4) offering to have Concetta participate in a 45-minute telephone interview from her home, and (5) offering to have attorney Carter make an attorney proffer and have Concetta provide the Commission staff with a sworn affidavit setting forth the bases for the purchases of Covad stock through her brokerage account. Ali Declaration, ¶¶ 20, 21, 22, 23, 24, 25, 28. On behalf of Concetta, attorney Carter has refused each of these offers to accommodate Concetta with respect to her testimony.

2. **DKD Sr.**

At DKD Sr.'s testimony on May 5, 2005, attorney Carter stated that he possessed responsive documents but was not going to produce them. Attorney Carter contended that the subpoena request for all documents concerning DKD Sr.'s assets was overbroad, intrusive,

overburdensome and harassing. She further stated that DKD Sr. would not produce documents concerning accounts jointly held with Concetta, because Concetta had not yet decided whether to invoke her Fifth Amendment rights. Ali Declaration, ¶ 32.

On November 20, 2006, the Commission staff sent a letter to attorney Carter asking whether DKD Sr. was still refusing to produce his responsive documents for the reasons she had provided at his testimony. To date, attorney Carter has not responded to the staff's letter. Ali Declaration, ¶¶ 33, 34.

## III. ARGUMENT

### A. The Federal Securities Laws Authorize This Court to Enforce Commission Subpoenas upon Application by the Commission

Section 20(c) of the Securities Act [15 U.S.C. §77t(c)], Section 21(c) of the Exchange Act [15 U.S.C. §78u(c)], Section 209(c) of the Advisers Act [15 U.S.C. §80b-9(c)], and Section 42(c) of the Investment Company Act [15 U.S.C. §80a-41(c)] authorize any district court where the Commission is carrying on an investigation to enforce the Commission's subpoenas upon application of the Commission. Courts in this District have frequently issued orders to show cause in subpoena enforcement proceedings filed by the Commission's Boston District Office with respect to its investigations. *See, e.g.*, SEC v. Calvin, MBD No. 02-10132-WGY (D. Mass. June 6, 2002); SEC v. Timson, MBD No. 02-10076-RCL (D. Mass. March 15, 2002); SEC v. DiBella, MBD No. 00-10235-NG (D. Mass. July 7, 2000); SEC v. Cottrill, MBD No. 99-10096-EFH (D.Mass. March 5, 1999); SEC v. Blizzard, MBD No. 97-10222-MLW (D. Mass. April 23, 1997).

## B. The Commission's Subpoenas to Concetta and DKD Sr. Satisfied All Applicable Requirements

To enforce an administrative subpoena, a court must be satisfied that: (1) the inquiry is being conducted for a proper purpose; (2) the subpoena was issued in accordance with the required administrative procedures; and (3) the information sought is relevant to that legitimate purpose. *See, e.g.*, United States v. Powell, 379 U.S. 48, 57-58 (1964); SEC v. Howatt, 525 F.2d 226, 229 (1st Cir. 1975); SEC v. Murray Director Affiliates, Inc., 426 F.Supp. 684, 686 (S.D.N.Y. 1976). Once the Commission meets these criteria, the opposing party bears the burden of establishing that the agency's purpose was unlawful or its subpoena unreasonable. U.S. v. Powell, 379 U.S. at 58 (unlawful purpose); SEC v. Arthur Young & Co., 584 F.2d 1018, 1034 n.139 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1071 (1979) (unreasonable burden); *see also* Howatt, 525 F.2d at 229 (court's role in enforcing subpoena is to ensure that process is not abused and agency is not acting in bad faith). When the Commission's inquiry is authorized and the information sought is relevant to the inquiry, the opponent's burden of showing unreasonableness "is not easily met." SEC v. Brigadoon Scotch Dist. Co., 480 F.2d 1047, 1056 (2nd Cir. 1973), *cert. denied*, 415 U.S. 915 (1974). Here, the Commission's subpoenas clearly satisfy all applicable standards.

### 1. The Commission's Inquiry is for a Proper Purpose

The Commission is authorized by Section 21(a) of the Exchange Act to exercise its discretion to conduct investigations to determine whether any person "has violated, is violating, or is about to violate" any provisions of the Exchange Act or the rules or regulations promulgated

thereunder. 15 U.S.C. §78u(a). Section 20(a) of the Securities Act [15 U.S.C. §77t(a)], Section 209(a) of the Advisers Act [15 U.S.C. §80b-9(a)], and Section 42(a) of the Investment Company Act [15 U.S.C. §80a-41(a)] provide the Commission with similar authority to investigate potential violations of those statutes.

This investigation is being conducted pursuant to the March 22, 2005 Amended Formal Order issued by the Commission pursuant to Section 20(a) of the Securities Act, Section 21(a) of the Exchange Act, Section 209(a) of the Advisers Act, and Section 42(a) of the Investment Company Act. Accordingly, this investigation is lawful and falls within the scope of authority that Congress has granted to the Commission. *See* SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1376 (D.C. Cir.), *cert. denied*, 449 U.S. 993 (1980) (recognizing scope of Commission's authority under §21(a) of the Exchange Act).[5]

### 2. The Commission Has Satisfied All Administrative Requirements

The subpoenas to Concetta and DKD Sr. satisfy all applicable administrative requirements. Pursuant to Section 19(c) of the Securities Act [15 U.S.C. §77s(c)], Section 21(b) of the Exchange Act [15 U.S.C. §78u(b)], Section 209(b) of the Advisers Act 15 U.S.C. §80b-

---

[5] The Commission need not make out a "probable" or "reasonable" cause showing in order to conduct an investigation. *See, e.g.*, Howatt, 525 F.2d at 229; Brigadoon Scotch, 480 F.2d at 1053. In U.S. v. Morton Salt Co., 338 U.S. 632, 643 (1950), the Supreme Court compared an agency inquiry to that of a grand jury, which can investigate on mere suspicion that the law has been violated without a showing of probable cause. Like the Federal Trade Commission in Morton Salt, the Commission performs a function similar to that of a grand jury, and the scope of its inquiries is not to be limited narrowly by questions or forecasts of the probable results of its investigations. U.S. v. Bisceglia, 420 U.S. 141, 147-48 (1975) (quoting Blair v. U.S., 250 U.S. 273, 287 (1919)); *see also* Arthur Young & Co., 584 F.2d at 1023-24; Brigadoon Scotch, 480 F.2d at 1052-53.

9(b)], and Section 42(b) of the Investment Company Act [15 U.S.C. §80a-41(b)], officers designated by the Commission are empowered to subpoena witnesses and require the production of relevant evidence. Bradford E. Ali, who is a senior counsel in the Commission's Boston District Office, issued the subpoenas to the Respondents and was specifically empowered by the Amended Formal Order with authority to subpoena witnesses and documents in connection with this investigation. Ali Declaration, ¶¶ 5, 6, 17.

In addition, pursuant to Rules 150(c) and 232(c) of the Commission's Rules of Practice, investigative subpoenas may be served by several methods, including through the U.S. Postal Service by certified mail. 17 C.F.R. §§201.150(c), 201.232(c). The April 6, 2005 subpoena to DKD Sr. was served at his home address by certified mail, and the April 6, 2005 subpoena to Concetta was served by certified mail upon attorney Carter, who agreed to accept service on her behalf. Ali Declaration, ¶17. Accordingly, the subpoenas were issued properly by an authorized officer of the Commission and were served in compliance with applicable administrative procedures.

### 3. The Commission Is Seeking Relevant Information

For purposes of subpoena enforcement, relevance is established when the information sought is not "plainly incompetent or irrelevant for any lawful purpose." Arthur Young & Co., 584 F.2d at 1029 (*citing* Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943)). The court in Arthur Young held that "the test is relevance to the specific purpose, and the purpose is determined by the investigators." 584 F.2d at 1031.

Here, the information sought by the Commission is directly relevant to the Commission's ongoing investigation of potential securities laws violations. The Commission seeks to learn,

10

among other things, whether Concetta, DKD Sr. and others committed illegal insider trading in Covad. The documents and testimony requested by the subpoenas are directly relevant to those issues.

### C. Concetta and DKD Sr. Have Not Provided Meritorious Reasons For Their Failure to Comply with the Administrative Subpoenas

More than nineteen months have elapsed since the issuance of the April 6, 2005 subpoenas for documents and testimony. To date, Concetta and DKD Sr. have not produced any responsive documents, and Concetta has not appeared before the Commission staff to give testimony. The communications from attorney Carter indicate that Concetta and DKD Sr. are refusing to comply with the subpoenas based primarily on Concetta's medical condition. None of the doctor's letters, however, indicates that Concetta: (1) is suffering from any memory impairment, (2) is unable to provide testimony within the parameters of those that the Commission staff has offered her (*i.e.*, one-hour at a time at Concetta's home, at attorney Carter's office, or over the telephone), or (3) is unable to confer with counsel about whether to invoke her Fifth Amendment rights. During the course of the past nineteen months, the Commission staff has offered numerous accommodations to Concetta, all of which conform to the parameters communicated in letters from Concetta's doctor, yet she has refused to comply to date.

### D. The Commission's Application Should Be Granted Expeditiously

The Respondents' conduct has delayed, and continues to delay, a lawful enforcement investigation by the Commission. The Commission respectfully submits that expeditious action on this Application is necessary and appropriate so as to allow that investigation to go forward.

Because of the need for expeditious action, the law clearly provides that subpoena enforcement proceedings generally are summary in nature. *See, e.g.*, SEC v. Sprecher, 594 F.2d 317, 319-320 (2nd Cir. 1979); SEC v. First Security Bank of Utah, N.A., 447 F.2d 166, 168 (10th Cir. 1971), *cert. denied sub nom. Nemelka v. SEC*, 404 U.S. 1038 (1972). As the Court of Appeals for the Second Circuit stated in U.S. v. Davey, "[W]e take this occasion to stress again the desirability of expediting resolution of any question concerning the validity of subpoenas and the production of evidence in the district court as well as on the appellate level. These matters should be given precedence over other business." 426 F.2d 842, 845 (2nd Cir. 1970) (discussing IRS summons). Accordingly, the Commission respectfully requests this Court to act expeditiously to grant this Application and the requested relief.

## IV.   CONCLUSION

For the reasons stated above, the Commission requests that its Application be granted in all respects and that this Court enter: (1) an Order to Show Cause why Respondent Concetta A. Donovan should not comply with the Commission's administrative subpoena for documents and testimony, and why Respondent David K. Donovan, Sr. should not comply with the Commission's administrative subpoena for documents; and (2) an Order compelling Respondents Concetta A. Donovan and David K. Donovan Sr. to produce all documents responsive to the administrative subpoena and compelling Respondent Concetta A. Donovan to appear for testimony (in one-hour increments, if necessary) in the Commission's Boston District Office.

Respectfully submitted,

/s/ 

Frank C. Huntington (Mass Bar No. 544045)
   Senior Trial Counsel
Bradford E. Ali (Mass. Bar No. 649541)
   Senior Counsel
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
33 Arch Street, 23rd Floor
Boston MA 02110
(617) 573-8903 (Ali)
(617) 573-4590 (facsimile)

Dated: November 30, 2006

## Certificate of Service

This certifies that, on November 30, 2006, I caused copies of the following to be sent via facsimile and certified mail (return receipt requested) to Valerie S. Carter, counsel for Respondents Concetta A. Donovan and David K. Donovan, Sr., to facsimile number (781) 861-0065, and to the following address:

Carter & Doyle, LLP
Attorneys at Law
Lexington Office Park
430 Bedford Street, Suite 195
Lexington, MA 02420

1. Application for Order to Show Cause and for Order to Comply with Administrative Subpoenas;

2. Declaration of Bradford E. Ali, Esq. in Support of Application for Order to Show Cause and for Order to Comply with Administrative Subpoenas;

3. [proposed] Order Requiring Concetta A. Donovan and David K. Donovan, Sr. to Show Cause; and

4. [proposed] Order Requiring Concetta A. Donovan and David K. Donovan, Sr. to Comply with Administrative Subpoena; and

_____
Bradford E. Ali